**Eric A. OFFUTT, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 86–961.**

District of Columbia Court of Appeals.

Submitted Nov. 5, 1987.
Decided Dec. 22, 1987.

Kenneth Alford, Washington, D.C., appointed by the court, was on the brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Mary Ellen Abrecht, Terence J. Keeney and Robert A. Feitel, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and NEWMAN and TERRY, Associate Judges.

PRYOR, Chief Judge:

After a trial by jury, appellant was convicted of possession of phencyclidine (PCP) and cannabis (marijuana) with intent to distribute. D.C. Code § 33–541(a)(1) (1987 Supp.). On appeal, appellant contends the trial court erred in its refusal to suppress the physical evidence found on his person. We affirm.

Evidence from a pretrial suppression hearing showed that a police station clerk in the Third District received a phone call at approximately 3:30 a.m., from an informant, who identified himself by a police informant identification number. The informant told the clerk a man named "Tree" was selling drugs on the ninth floor of Claridge Towers, 1221 M Street, N.W. The informant identified appellant as a black male, approximately 6 feet 3 inches tall, weighing about 240 pounds, and wearing a red "Georgetown" shirt and beige shorts underneath a brown apron. The informant said appellant had a .22 caliber automatic gun and narcotics hidden in the crotch of his shorts. The information provided by the informant was transmitted over the police radio, and Officer Kevin Loepere responded to the call at approximately 3:50 a.m.

Upon arrival in the lobby of the building, Officer Loepere met two officers in the backup unit. The three officers took the elevator to the ninth floor. When the elevator doors opened, appellant was seen standing in the hallway, but the three officers hesitated, fearing appellant was armed, and the elevator doors closed. The elevator returned to the lobby, where Officer Loepere remained while the other two officers went to check the rear and side exits to the apartment building. When the elevator doors opened again, appellant emerged. Officer Loepere drew his service revolver, instructed appellant to turn around and place his hands on the wall. Officer Wayne P. Walker, a member of the backup unit, returned and commenced the pat-down while Officer Loepere held appellant at bay. Officer Walker began the frisk at the top of appellant's neck, working his way down the body. As Officer Walker started to check the lower body area, appellant moved his left hand "and started going down into the crotch" area of his shorts. Officer Walker tried to physically return appellant's hand to the wall, but appellant refused. A brief struggle

ensued and appellant was thrown to the ground. Officer Loepere saw a plastic vitamin pill bottle containing tinfoils fall out of appellant's hand during the struggle. The tinfoils contained marijuana laced with PCP. After smelling the chemical odor from the PCP, Officer Loepere arrested appellant.[1] No gun was discovered on appellant's person. Appellant's motion to suppress the evidence was denied by the trial judge on the grounds that the officers had an "articulable suspicion" to stop appellant and a reasonable basis to make a preliminary search for weapons.

In order to justify a limited investigative seizure, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. *Curtis v. United States,* 349 A.2d 469, 471 (D.C. 1975) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)); *see also Groves v. United States,* 504 A.2d 602, 604 (D.C. 1986) (a lesser quantum of evidence is needed to create a reasonable suspicion to justify an investigative stop than to establish probable cause to arrest). The facts relied upon must be sufficient to allow the police officer to reasonably conclude in light of his experience "that criminal activity may be afoot." *Curtis v. United States, supra,* 349 A.2d at 471; *Terry v. Ohio, supra,* 392 U.S. at 30, 88 S.Ct. at 1884. In assessing the reasonableness of a seizure, the police officer must be judged against an "objective standard," that is, whether the facts available to the police officer at the moment of seizure warrant a man of reasonable caution in the belief that the seizure was reasonable. *Curtis v. United States, supra,* 349 A.2d at 471; *Terry v. Ohio, supra,* 392 U.S. at 21–22, 88 S.Ct. at 1880.[2]

We conclude that the trial court properly denied appellant's motion to suppress since, on the basis of the informant's tip, and Officer Loepere's subsequent observation, Officer Loepere had articulable grounds to suspect appellant possessed narcotics and a weapon.[3] The information relayed to Officer Loepere identified appellant's attire, reasonably described appellant's weight and height, and, most importantly, indicated appellant's location in the building and the location of drugs and the suspected weapon on his person. Given these circumstances, we also find it was reasonable for Officer Loepere to display his weapon when confronting a suspected armed drug dealer alone in the early morning hours, and such action does not by itself transform a *Terry* stop into an arrest. *See Davis v. United States,* 498 A.2d 242, 245 (D.C.1985); *United States v. White,* 208 U.S.App.D.C. 289, 294–95, 648 F.2d 29, 34–35, *cert. denied,* 454 U.S. 424, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981) ("the use or display of arms may, but does not necessarily, convert a stop into an arrest"). Accordingly, the judgment on appeal is

*Affirmed.*

NEWMAN, Associate Judge, dissenting:

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court overruled the two-prong test they had previously enunciated in *Aguilar*

---

1. Appellant does not raise any issue as to whether there was probable cause for his arrest following the disclosure of the plastic bottle and the smell of PCP.

2. In comparable situations, we have consistently held that police can make an investigatory stop of an individual if they have reasonable articulable suspicion that criminal activity is afoot. *See Lawson v. United States,* 360 A.2d 38 (D.C. 1976) (opportunity for investigation might well evaporate in the delay if police are prohibited from acting upon reports of crime, except where citizen eyewitness identified himself, or if he seeks out police cruiser or presents himself at precinct house to make report); *Davis v.*

United States, 284 A.2d 459, 460 (D.C.1971) (when officers received information of man sitting in car with a gun, it was their duty to make an investigation of that report; and when description of car and license plates proved correct, they were justified in taking further investigative steps). *See also United States v. Walker,* 294 A.2d 376, 378 (D.C.1972), *after remand,* 304 A.2d 290 (D.C.), *cert. denied,* 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d 245 (1973); *United States v. Frye,* 271 A.2d 788, 789 (D.C.1970); *cf. Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

3. Officer Loepere's observation of appellant matched the description given by the informant.

*v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969), to determine probable cause to search. The two-prong test was (1) the informant's basis of knowledge, and (2) providing sufficient facts to establish the informant's veracity or the reliability of his report. If there was a failure to satisfy either prong, then there was no probable cause. In *Illinois v. Gates,* the Court adopted a "totality of the circumstances" test. As we are bound to do, we have followed *Illinois v. Gates.* In this regard, however, it is crucial to remember what was involved in that case. An anonymous handwritten letter was sent to the police accusing the Gates of drug dealing. The letter recounted that the Gates planned a *future trip* to Florida to buy drugs. It set forth the modes of transportation that the Gates would take on the *future trip,* some details of what they would do in Florida and how they would return to Illinois. The police surveilled the Gates as well as conducting other investigations. The surveillance confirmed, in large measure, the prediction of the Gates' *future* conduct. *See Illinois v. Gates, supra* 462 U.S. at 291–93, 103 S.Ct. at 2360–61 (Stevens, J., dissenting). The police thereupon obtained a warrant and conducted a search.

That is not our case. Here, an apparently paid informant, without giving any basis of knowledge, tells the police how Offutt is dressed, where he can be found, and that he is dealing drugs while armed with a pistol. The first two items were entirely innocent, i.e., mode of dress and location; it was only the third—selling drugs while armed, which was sinister. The police verified only that which was entirely innocent—mode of dress and location. There was *nothing* to corroborate the reported criminal conduct. Most important, keeping in mind *Illinois v. Gates,* the informant here had not predicted any significant *future* conduct which the police corroborated.[1]

To sanction the search in this case is to say where an informant, anonymous or oth-

erwise, without any demonstrated basis of knowledge, can accurately describe a person's mode of dress and location, and couples that description with a claim of criminal conduct, the police, upon verifying the totally innocent elements of the report have probable cause to search. I refuse to join such a holding. The fourth amendment not only protects drug dealers. It protects you and me.

---

1. Unlike my colleagues, I think there was an    arrest, not a *Terry* stop.