**Kenneth C. ANDERSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 93–CF–1401.**

District of Columbia Court of Appeals.

Argued March 10, 1995.

Decided May 25, 1995.

Richard K. Gilbert, appointed by the court, Washington, DC, for appellant.

S. Hollis Fleischer, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese III, and G. Bradley Weinsheimer, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before WAGNER, Chief Judge, FERREN, Associate Judge, and GALLAGHER, Senior Judge.

* Former Associate Judge Sullivan was a member of the division that decided this case. After his departure from the court, Associate Judge Farrell was selected by lot to consider this petition.

GALLAGHER, Senior Judge:

This case involves an encounter between a police officer and the appellant who had been seen in a high crime area, late at night, and who acted nervous and put his hands back in his coat pocket after being asked to remove them upon being questioned by the officer. He appeals his convictions on the ground that the trial court erred in denying his motion to suppress since the police lacked articulable suspicion justifying his seizure and frisk. We agree and reverse his convictions.

## I.

Appellant was indicted on one count of carrying a pistol without a license in violation of D.C.Code § 22–3204(a) (Supp.1994), possession of an unregistered firearm in violation of D.C.Code § 6–2311(a) (1989), and unlawful possession of ammunition in violation of D.C.Code § 6–2361(3) (1989). Two suppression hearings were held, both resulting in the denial of appellant's motion to suppress evidence and statements.

The evidence from the suppression hearings reveals that several officers were patrolling the 1500 block of S Street, N.E., around midnight on March 22, 1992. This location is known as a high-drug area. The officers observed appellant and another person in the backyard of a house on an alley. When the two people observed the police car, appellant walked quickly away by cutting between two houses. One of the officers asked the remaining individual several questions and determined that neither of the men lived in the house and that they were just talking. The officer allowed him to move on.

The three officers then circled the block to look for appellant. About five minutes later, they spotted appellant at the corner of 16th Street and Minnesota Avenue, N.E. They identified him as the same person in the alley by his three-quarter length, heavy, beige or tan coat. One of the officers pulled the car alongside of appellant and said to him: "[c]ome here, I want to ask you some questions." He stopped, but did not move toward the police car. The officer exited the car and asked appellant to take his hands out of his pockets. He complied and the officer asked him what he had been doing in the backyard so late. He denied he had been in the yard. Appellant became nervous and put his hands back into his coat pockets. The officer again asked appellant to take his hands out of his pockets. He complied, but seemed increasingly nervous and wide-eyed, and began rocking back and forth.

At that point, the officer asked appellant to place his hands on the patrol car and performed a limited frisk. The officer discovered a bulge in his pocket in the shape of a gun. The officer removed a loaded .32 caliber revolver and arrested him. The trial court determined that the exchange between appellant and the officer was voluntary. Therefore, the court held that no seizure took place "until the moment when Officer Bryant concluded that [appellant's] conduct was so suspicious as to give rise to articulable suspicion that he may be armed and dangerous." The court further concluded that this suspicion justified the officer's limited *Terry v. Ohio* [1] frisk and denied the motion to suppress the evidence seized in the frisk.

Appellant was convicted on all counts. He was sentenced to periods of incarceration of three-and-one-third to ten years on carrying a pistol without a license suspended as to all but seven months, one year for possession of an unregistered firearm, and one year for unlawful possession of ammunition. The sentences were to run consecutively and included three years of probation to run concurrently on all sentences.

## II.

Appellant contends that the trial court improperly failed to suppress evidence seized by the police pursuant to a *Terry* seizure and frisk. We stated in *Peay v. United States,* 597 A.2d 1318, 1319–20 (D.C.1991) (*en banc*):

> To justify an investigative detention under *Terry v. Ohio,* 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), the police "must be able to point to specific and articulable facts which, taken together with rational

1. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

inferences from those facts, reasonably warrant that intrusion." *Id.* at 21 [88 S.Ct. at 1880]. This "minimal level of objective justification" is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). In determining whether a *Terry* stop is lawful, the court must look to the "totality of the circumstances." *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990), *quoting United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). Even if each specific act by a suspect could be perceived in isolation as an innocent act, "the observing police officer may see a combination of facts that make out an articulable suspicion." *United States v. Bennett,* 514 A.2d 414, 416 (D.C.1986). . . . In reviewing a trial court order denying a motion to suppress, the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court ruling.

(Footnotes and citations omitted.) The issue in this case is whether the specific and articulable facts were sufficient to make constitutionally reasonable the police officer's decision to frisk appellant.

■ The government asserts that the officer had an articulable suspicion that criminal activity was afoot and that appellant was armed and dangerous. We look to many factors justifying a *Terry* stop or search for weapons in considering what may constitute an articulable suspicion that criminal activity was afoot or the person was armed and dangerous. These factors include, among others, the time of day, flight, the high crime nature of the location, furtive hand movements, an informant's tip, a person's reaction to questioning, a report of criminal activity or gunshots, and the viewing of an object or bulge indicating a weapon. *See, e.g., Adams v. Williams,* 407 U.S. 143, 147–48, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612 (1972); *Cousart v. United States,* 618 A.2d 96 (D.C.1992); *Williamson v. United States,* 607 A.2d 471 (D.C.1992); *Gomez v. United States,* 597 A.2d 884 (D.C.1991); *Duhart v. United States,* 589 A.2d 895 (D.C.1991); *Stephenson v. United States,* 296 A.2d 606 (D.C.1972).

The government points to the following facts, in their totality, as achieving a sufficient articulable suspicion to justify the frisk: (1) the area was a high crime area where drug transactions take place; (2) appellant was standing with another man in the backyard of a house on a alley during a cold winter night around midnight; (3) appellant quickly walked away from the police; (4) neither appellant nor the other man resided in the house; (5) appellant denied that he had been in the backyard despite being seen by the officers; (6) appellant placed his hands back in his pocket after being asked to remove them; and (7) appellant became nervous, rocked back and forth, and got wide-eyed upon questioning. The government asserts that these facts when taken as a whole reveal that the officer reasonably could have believed that criminal activity was afoot and appellant might be armed and dangerous.

In *United States v. Barnes,* 496 A.2d 1040 (D.C.1985), we reversed the trial court's order granting a motion to suppress a pistol and ammunition forming the basis of the weapons charges and remanded for trial. The officer had observed appellee in front of a clothing store, near closing time of 10:00 p.m., in a high crime area. Appellee's companion went in and out of the store several times, leading the officer to believe appellee was casing the store. The officer approached appellee and asked him some questions. Appellee informed the officer that he was just hanging around, had no business at the store, and had previously been arrested for armed robbery. *Id.* at 1041. The officer also observed a bulge in the stomach area of appellee's windbreaker. We held that the subsequent frisk which discovered the revolver was an appropriate *Terry* frisk and investigation. *Id.* at 1045. We found particularly important Barnes' comment that he had been armed during criminal activity in the past. Thus, we concluded that even if the bulge had not been observed the frisk would have been appropriate under *Terry. Id.*

In *Peay, supra,* 597 A.2d at 1319, we held that "the officer's stop of appellant for further investigation was reasonable within the meaning of the Fourth Amendment." In *Peay,* the appellant hurriedly went inside a

building known for drug trafficking when the police arrived for a raid. Inside the building an officer came upon the appellant who was clutching something in his left hand which the officer thought could be a weapon. As the officer approached, appellant turned away. The officer identified himself, asked appellant to stop, and asked what was in his hand. The appellant started walking away and the officer put his hand on appellant's shoulder and thirteen small plastic bags of marijuana fell to the floor. We found significant the fact that appellant was clutching something in his left hand that the officer thought might be a weapon in concluding that the detention was constitutionally permissible. *Id.* at 1321–22.

The fact that a person might be concealing or hiding a weapon also played an important role in *Crowder v. United States,* 379 A.2d 1183 (D.C.1977). In *Crowder,* the officers arrived on the scene of a crap game at 4:30 a.m., in a high crime area. Most people fled the scene, but the appellant stayed and was asked for identification by the officers. He became nervous. Appellant was holding a newspaper under his arm and "in searching for his identification, tried to keep the newspaper shielded from view." *Id.* at 1184. The officer testified that most people shooting crap have a weapon and that anyone having a newspaper at four in the morning has something in it. We concluded that "[i]n light of his experience, the policeman could fairly conclude that appellant's nervous manner and his attempt to shield the newspaper from view indicated the presence of a weapon," and therefore, the trial court did not err in denying the motion to suppress. *Id.* at 1185.

However, in the present case the officer did not see anything in appellant's pocket let alone anything rising to the suspicion of a weapon. There was no report or observation of criminal activity. The officer did not view any object or any attempt by the appellant to hide anything. There was no admission by the appellant, as in *Barnes,* that he had been armed during criminal activity in the past and therefore might be armed during the encounter with the officer. Rather, this case is factually closer to *Curtis v. United States,*

349 A.2d 469 (D.C.1975), and *Duhart v. United States, supra.*

In *Curtis,* police officers observed appellant and a woman walking up an alley at about 7:20 p.m., in a high crime area. When appellant heard someone yell police officers, he "made a motion with his hand as if to move his right arm to the left side of his coat." *Id.,* 349 A.2d at 470. The officer frisked appellant and found marijuana in a brown package. We concluded that the facts "did not constitute reasonable grounds supporting a conclusion that some particular criminal activity was afoot." *Id.* at 471. We stated that, "in making the initial seizure of appellant, the officers were acting merely on a suspicion or hunch and, accordingly, the intrusion was unreasonable at its inception." *Id.* The motion of the hand was not enough. Thus, we suppressed the quantity of marijuana.

In *Duhart,* the officer observed appellant display something to another man at 7:25 p.m., in a high drug area. When the two men saw the officer, appellant put the object in his pocket and the two men walked away in opposite directions. The officer asked appellant if he could talk to him.

> Appellant stopped and walked back to the officer. As he did, the officer asked him what he had in his pocket. Appellant did not respond, and the sergeant asked him to take his hand out of his pocket. When appellant did not comply, the officer repeated his request, and as appellant responded, "bringing his hand out real reluctantly," according to the officer, the officer grabbed appellant's hand around the wrist to see what he was bringing out of his pocket. As his hand came out of his pocket, the officer "could see that he didn't have anything in his pocket." According to the officer, appellant then "began to act a little funny by turning his body sideways." When appellant did not respond to the officer's question, "What's wrong with you?" the officer said "Well, get up against the car."

*Id.,* 589 A.2d at 896 (footnote omitted). Appellant then attempted to stand in a way that the officer could not pat him down—he was trying to put his right side up against some-

thing so the pat down could not be accomplished. Eventually, the officer conducted a pat down and found a loaded gun. We found that the facts in this case did not constitute "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 898. We noted that the officer did not observe "a one-way transfer of money or an object appearing to be drugs." *Id.* at 899. Nor did the officer observe the object that appellant put in his pocket. We also note that "citizens have no legal duty to speak to police." *Id.* at 900–901. Thus, we held that the evidence seized were fruits of an illegal seizure and must be suppressed. We therefore reversed the conviction.

This case is similar to *Curtis* and *Duhart.* In *Curtis,* the officer did not see appellant hide anything. In *Duhart,* the officer did see the object appellant hid, but did not identify it as a potential weapon as in *Peay* and *Crowder.* Nor was there, as in *Barnes,* an admission by the appellant that he had been armed in past criminal activity and therefore might be armed in the present. Here, the officer did not see any object in the coat leading him to suspect there was a weapon. Here, as in *Duhart,* appellant was initially stopped for a consensual encounter where he reluctantly removed his hands from his pocket and acted in an unusual manner. Although appellant placed his hands back into his pockets, that alone is not enough to distinguish this situation from *Duhart.* Appellant did remove his hands from his pocket when requested again by the officer. The officer did not observe criminal activity, was not responding to a report of criminal activity, nor was he following-up on an informant's tip. There was no bulge or object being concealed that the officer could think was a weapon as in *Peay* and *Crowder,* nor was there an admission of past weapons use in a criminal activity as in *Barnes.* Viewing all the facts and circumstances, the officer lacked articulable suspicion justifying the seizure and frisk.

**2.** Appellant asserts two other errors on appeal arising from the impairment of his peremptory challenges and the trial court's denial of a requested defense instruction. It is not necessary

## III.

The Fourth Amendment requires that there must be more than a person being seen in an alley late at night, walking away from the police in a high crime area, who upon being questioned puts his hands back in his pockets and acts in a strange manner. While we do not say at all that the officer should have ignored appellant's presence in the area under the circumstances and proceeded to investigate, the facts in this case, as in *Curtis* and *Duhart,* do not support the seizure. The trial court erred in denying appellant's motion to suppress. Therefore, the conviction must be reversed.[2]

*Reversed.*

to address these issues because we have reversed the conviction on the trial court's error in failing to suppress the evidence.