**In re A.S.,**

**District of Columbia, Appellant.**

**No. 02–FS–198.**

District of Columbia Court of Appeals.

Argued Dec. 11, 2002.

Decided June 26, 2003.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Supervisory Corporation Counsel, were on the brief, for appellant.

Karen Pita Loor, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Before us is a pretrial government appeal from a juvenile proceeding in which the trial court suppressed evidence of drugs found on A.S. when he was stopped and searched by a police officer. The trial court held that the stop and frisk of A.S. was unlawful under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and the Fourth Amendment. We affirm.

In reviewing a trial court ruling on a suppression motion, the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court ruling. *Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (en banc). Thus, as a key to this appeal, here "we present the facts, which in some respects are not entirely clear,[1] in the light most favorable to sustaining the ruling of the trial court" to suppress the evidence. *District of Columbia v. Mancouso,* 778 A.2d 270, 271 n. 1 (D.C.2001). The only witness for the government was Officer Matthew H. Adcock. Shortly before midnight, he and several other officers (all in civilian clothes except for a Metropolitan Police jacket) were on routine patrol in an unmarked vehicle in a high drug area.[2] A.S. was standing on a corner conversing with another unidentified individual. Officer Adcock made eye contact with A.S., who had a wide-eyed "shocking" expression on his face. As the vehicle stopped and Officer Adcock alighted, A.S. walked from the area[3] "briskly" but not running; as he did so, he "made a

stuffing motion with his right hand into the waistband area."[4] Based on past experience,[5] Officer Adcock suspected that A.S. was trying to conceal a weapon. A.S. stopped in response to a call by Officer Adcock,[6] who as soon as he reached A.S. "immediately" placed his hand on the waistband area of the stuffing motion. Moving his hand further toward the front, Officer Adcock noticed and felt a bulge, a soft object that he believed to be narcotics and in fact on retrieval turned out to be two bags of drugs.

On this record, the trial court "found that the fact of respondent's presence in a high crime area, at 11:40 p.m., and furtive gesture, the stuffing motion, were insufficient to justify the seizure of the respondent." We think the trial court fairly summarized the key operative facts and correctly concluded that under our case law they did not reach "reasonable articulable suspicion that criminal activity was afoot."[7]

The determinative case, controlling on this panel, is *Duhart v. United States,* 589 A.2d 895 (D.C.1991). In that case, a police

1. After oral argument, we remanded the record to the trial court in order that it could replicate its findings of fact that the trial tape had failed to record. Where those findings are unclear or where a particular finding is missing, we must follow the *Peay* standard.

2. Officer Adcock was aware of numerous calls to the police about weapons offenses in the area, but no such calls had been received that day about criminal activity in the area involving either drugs or guns.

3. Although A.S. was walking away "from the area," there was testimony that his actual path was in the general direction of the unmarked police vehicle.

4. It is not entirely clear whether A.S. recognized Officer Adcock to be a police officer in the dark of an unmarked car, despite its government tags and radio antenna, or thereafter, or that the stuffing motion was in response thereto. That cannot readily be assumed and, contrary to the government's as-

sertion, we do not read the trial court as having squarely so found. Nor is there any express finding with respect to the objective reasonableness of such a belief by Officer Adcock.

5. Officer Adcock had been involved in numerous arrests for weapons offenses during his two years on the police force, and 99% of the time, the weapons had been recovered from the waistband area of suspects.

6. A.S. did not respond to the question whether he had any drugs or weapons on him.

7. A.S. argues that even if the stop and initial frisk were lawful under *Terry,* the seizure of the bags of drugs could not be justified under the "plain feel" doctrine. The trial court declined to make any findings with respect to this second issue, by no means obvious one way or the other, and we do not need to reach it.

officer in full uniform observed appellant displaying "something" to another man. The area had been the subject of numerous complaints of illegal narcotics and on the basis of his extensive experience of eighteen years, the officer believed that a narcotics transaction was taking place. The two men looked up at the officer, the appellant put "whatever he was showing" into his pocket, and the two men started walking in opposite directions. Appellant stopped at the officer's request. The officer asked appellant to take his hand out of his pocket and, when he reluctantly complied, the officer seized his wrist. We held that a seizure occurred at that point and reversed the ruling of the trial court that a valid *Terry* stop had occurred.[8] With respect to the two people examining something and the appellant showing the item into his pocket upon spotting the police officer, we concluded that "if the behavior of a suspect is capable of too many innocent explanations, then the intrusion cannot be justified," and that there was "no indication that the object that appellant put into his pocket resembled illicit narcotics." *Id.* at 900.

In the case before us, the officer did not even see any object in A.S.'s hand, and the "stuffing motion," as A.S.'s brief puts it, could be the person's "tucking in his shirt, scratching his side, pulling up his pants, arranging his underwear, pager, cell phone, or walkman, etc." Indeed, while in

*Duhart,* the appellant was acting in response to the presence of a known police officer, in our case even that fact is not clearly established and we are sustaining, not reversing, a trial court ruling with its axiomatic presumption of correctness. *See, e.g., Stockard v. Moss,* 706 A.2d 561, 567 (D.C.1997). We cannot say that the trial court erred in concluding in effect, as we did in *Duhart,* that the officer's seizure was "not based upon particularized facts but an 'inchoate and unparticularized suspicion or hunch.'" *Id.* at 901 (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868).[9]

*Affirmed.*

---

**8.** In a subsequent pat-down, the officer found an unregistered pistol.

**9.** A somewhat similar case, cited by the trial court and relying on *Duhart,* is *Anderson v. United States,* 658 A.2d 1036 (D.C.1995). There appellant, in what began as a voluntary encounter with a uniformed officer, became increasingly nervous and wide-eyed and kept putting his hands in and out of his pockets contrary to the request of the officer. We concluded that "[t]he Fourth Amendment requires that there must be more than a person being seen in an alley late at night, walking away from the police in a high crime area,

who upon being questioned puts his hands back in his pockets and acts in a strange manner." *Id.* at 1040. *In re D.E.W.,* 612 A.2d 194 (D.C.1992), cited by the government, is clearly distinguishable. We sustained the trial court's denial of a motion to suppress where the officer had already justifiably stopped the vehicle in which appellant was riding and saw appellant, in response to this obvious police presence, "shove something down the front part of his pants under his coat" and then "held his hands over the area where he was pushing."