**In re A.F.,**

**District of Columbia, Appellant.**

**No. 04–FS–837.**

District of Columbia Court of Appeals.

Argued Dec. 16, 2004.
Decided Dec. 30, 2004. *

---

\* This opinion was originally issued in unpublished form. It is now being published upon grant of appellee's motion to that end.

Winsome G. Gayle, Public Defender Service, with whom James Klein and Andrea Roth, Public Defender Service, were on the brief, for appellee.

Janice Y. Sheppard, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General, Edward Schwab, Deputy Attorney General and Rosalyn Calbert Groce, Chief, Juvenile and Criminal Section, were on the brief, for the District of Columbia.

Before: WAGNER, Chief Judge, FARRELL and GLICKMAN, Associate Judges.

WAGNER, Chief Judge:

A.F. was charged as a juvenile with one count of possession with intent to distribute a controlled substance (marijuana) within a drug-free zone (D.C.Code §§ 48–904.01(a), –904.07a (2001)). The trial court granted A.F.'s motion to suppress evidence, and the District of Columbia appealed. The District argues that the trial court erred in granting the suppression motion. We affirm.

I.

Officer Israel James testified that he was in the area of First and O Streets, N.W. at about 5:00 p.m. on April 19, 2004 in response to a drug complaint at 90 O Street, N.W. Officer James and Officer Figaroa were in an unmarked car with government tags and an antenna for police radio transmissions. Officer James testified that they both had on plain clothes with badges and weapons displayed, and that he had on a black police vest with the word "police" in white letters. He said that he was not sure whether Officer Figaroa had on a police vest. According to Officer James, as they turned onto O Street from First Street, while a quarter of a block away, he saw A.F. on the south sidewalk, talking with other individuals. Some people were standing near a parked vehicle which had its hood up while being repaired. Officer James testified that A.F. looked in their direction, made eye contact with him or the other officer, and "placed his right hand inside his right front pants pocket in a very quick manner." First, A.F. walked quickly in the opposite direction from the unmarked car. When the police stopped their car, A.F. turned around, returned to the parked car that was being repaired and entered the vehicle through the front passenger door. The hood of the vehicle was raised, its engine was running and someone was working on the car. Officer James testified that he was not sure where A.F. was looking as he got out of the vehicle, but he "gathered from his behavior that [A.F.] was attempting to get away from the scene." The officer said that this happened in front of 78 O Street, N.W. Officer James approached the driver's side of the vehicle and asked A.F. to step out of the car. According to the officer, A.F. hesitated, but he then complied, and he did not try to run away. A.F. may have said that "he didn't have nothing." Officer James then patted A.F. down because of concern for his safety, given the neighborhood and A.F.'s behavior. The officer said that he went to A.F.'s pocket and felt a package, which had the shape, size and plastic sound of drug packaging. The officer recovered from A.F. a plastic bag containing marijuana. The officer testified that he had recovered drugs in that neighborhood many times, where marijuana is the main drug sold.

Although the trial court found that Officer James was candid, it concluded that he "acted on suspicion and hunch" and that he did not have articulable suspicion to justify the seizure and subsequent pat down. The court also found that a seizure occurred when the police patted down A.F. The trial court concluded that the stop and frisk of A.F. was not justifiable under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and granted A.F.'s motion to suppress.

## II.

The District argues that the trial court erred in granting the motion to suppress. It contends that the police officer made a valid investigatory stop and pat down of A.F., which led to the recovery of the drugs. A.F. responds that the recovery of the drugs resulted from an illegal investigatory stop that was not supported by a reasonable articulable suspicion that he was involved in criminal activity, as required under *Terry, supra.*

 "In reviewing a trial court['s] ruling on a suppression motion, the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court['s] ruling." *In re A.S.,* 827 A.2d 46, 47 (D.C.2003) (citing *Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (en banc)). This court "will not disturb the trial court's factual findings unless they are clearly erroneous." *In re D.A.D.,* 763 A.2d 1152, 1155 (D.C.2000) (citation omitted). However, this court "review[s] the trial court's conclusions of law *de novo*" and determines as a matter of law whether the stop and seizure were legally justified. *See id.* (citations omitted).

 A police officer may detain a person on less than probable cause if "the officer has a reasonable suspicion based on specific articulable facts that the person is involved in criminal activity." *Upshur v. United States,* 716 A.2d 981, 983 (D.C. 1998) (citing *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Terry, supra,* 392 U.S. at 21–22, 88 S.Ct. 1868) (other citation omitted). "[T]o support such an investigatory stop," a "minimal level of objective justification" is required. *Id.* (citations omitted). When the police make a valid stop under *Terry,* if they have reasonable and articulable suspicion that the suspect is armed and dangerous, they may conduct a protective search for weapons, which, in the absence of probable cause, " 'must ... be strictly circumscribed by the exigencies which justify its initiation.' " *Id.* (quoting *Terry,* 392 U.S. at 25–26, 88 S.Ct. 1868) (alteration in original). Applying these principles, we cannot say that the trial court erred in concluding that the police officer's seizure of A.F. was based on a hunch rather than articulable suspicion that A.F. was involved in criminal activity.

 The District argues that the facts demonstrate that A.F. reacted to a known police presence in a drug area by quickly placing his hand in his pocket as if putting something in his pocket and walking away. "[U]nprovoked flight upon noticing the police" is a factor for consideration in determining whether reasonable suspicion of criminal activity exists. *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citations omitted).[1] This case differs from *Wardlow* because the facts do not clearly establish, and the trial court did not find, either that A.F. fled or that he recognized the officers'

---

1. In *Wardlow,* the Supreme Court held that the police did not violate the Fourth Amendment by stopping and patting down a person who was in an area known for heavy narcotics trafficking and fled upon seeing the police. 528 U.S. at 124–25, 120 S.Ct. 673.

unmarked car as a police vehicle when it turned onto the street. In fact, A.F., who started to walk away, returned and sat in the passenger seat of a vehicle that had its hood up while undergoing repairs. Thus, appellant's actions in walking away were ambiguous, and the trial court did not err in rejecting the District's contention that A.F. was fleeing or planned to drive the vehicle away in an effort to escape. While Officer James testified that he had on a vest with police markings, there was no testimony concerning either the placement of the letters on the vest (front or back) or its visibility to persons on the street. Similarly, there was no evidence that the officers' badges were visible to people on the street from the vehicle. Therefore, the evidence of A.F.'s knowledge of the police presence was also ambiguous, and the trial court could properly resolve that issue against the government as well.

This case is more like *A.S., supra,* 827 A.2d at 48, where this court sustained the trial court's conclusion that the seizure was based on " 'unparticularized suspicion or hunch.' " In *A.S.,* the officers, who were in civilian clothes, were in an unmarked vehicle in a high drug area when A.S. made eye contact with one of them, made a stuffing motion into his waistband and walked away briskly. *Id.* at 47. In the present case, the trial court did not find that A.F. even engaged in evasive action or that he recognized or responded to a known police presence. Under the circumstances, we cannot say that the trial court erred in concluding that the seizure was based on hunch rather than reasonable particularized suspicion, and therefore, was insufficient to justify a *Terry* stop and subsequent pat down.

For the foregoing reasons, the decision of the trial court hereby is

*Affirmed.*

