UNITED STATES, Appellant,

v.

Larry N. PAGE, Appellee.

No. 6608.

District of Columbia Court of Appeals.

Argued Oct. 11, 1972.

Decided Dec. 20, 1972.

---

6. *See* Velez-Lozano v. Immigration & Naturalization Service, D.C.Cir., 463 F.2d 1305 (No. 71–1125, decided June 7, 1972).

**234**

David M. Bullock, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Henry F. Schuelke, III, Asst. U. S. Attys., were on the brief, for appellant.

Daniel J. Slattery, Jr., for appellee.

Before FICKLING, KERN and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

The only issue raised by this appeal is whether the motions judge erred in granting appellee's motion to suppress as evidence a gun found by police officers after a pat-down of appellee, a passenger in the back seat of a car stopped for speeding, and heroin found thereafter when he was searched more carefully.

We accept the statement of facts in appellant's brief which reads:

Officer Clarence E. Phillips and his partner were sitting on their scooters at 5th Street and Constitution Avenue, N.E., at about 5:00 p. m. during "rush hour" on May 10, 1972 (Tr. 3–4). Officer Phillips saw a Mustang automobile going east on Constitution Avenue at a high rate of speed. . . . [T]he two officers pursued the car for about five blocks and

overtook it as it stopped for a traffic light (Tr. 4). At that time appellee, who was seated in the right rear seat of the car, looked around at the officers and then moved his right arm and shouder "as if to hide something" or "put something away, get something" (Tr. 5–6). In response to the court's inquiries, Officer Phillips testified that it was possible that appellee could have been reaching for a handkerchief or putting a pack of matches in his pocket (Tr. 6). On the scene, however, Officer Phillips, based on his observations from his position at the right rear of the vehicle, concluded that "[i]t was obvious he was trying to hide something" (Tr. 5). As he approached the vehicle to see what appellee was doing, appellee "still had his arm towards the back of his body" (Tr. 6). The other officer walked to the driver's side to talk to the driver, and Officer Phillips walked to the other side of the vehicle and asked appellee what he was doing with his hand and arm. Appellee answered that he was hiding a beer can (Tr. 7). Officer Phillips was concerned for his and his partner's safety, so he asked appellee to step out of the car and then he opened the door, stepped back, and watched while appellee complied with his request (Tr. 7). Telling appellee to "stand there," Officer Phillips "did a quick pat down right alongside from his shoulders down to his pants" (Tr. 7). Feeling an object which "felt like a pistol to me," Phillips removed a Derringer pistol from appellee's right pocket (Tr. 8). Officer Phillips then searched appellee further and found, in his left front pocket, white powder wrapped in tinfoil (Tr. 11–12).

On cross-examination Officer Phillips stated that the driver of the car was charged with speeding (Tr. 8). Phillips had never seen appellee before this incident (Tr. 9). Before appellee was asked to get out of the car he "did bring his hand up and it was on his lap" in full view (Tr. 10–11). At that time Phillips could see nothing in appellee's hand (Tr.

11). Appellee offered no evidence at this hearing. [Footnotes omitted.]

■ Officer Phillips was the sole witness at the motion to suppress. The trial court held that there were no reasonable grounds to search the passenger after this routine traffic stop and granted the motion to suppress. We agree and affirm.

■ Any such search by police officers without a warrant is impermissible under the Constitution unless the supporting facts bring it within the reasonableness test of the fourth amendment. Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Humphrey, 409 F.2d 1055 (10th Cir. 1969). If made without a warrant, the search must be supported by probable cause or bear some reasonable relationship to the crime for which the arrest is made or to the safety of the officer if it is to come within one of the exceptions to the warrant requirement described in Coolidge v. New Hampshire, *supra* and United States v. Humphrey, *supra*.

■ With few exceptions, it has been held that a police officer does not have a right to search the person or the vehicle incident to an arrest for a traffic offense.[1] Ordinarily the exceptions involve special circumstances.[2] This court has recognized that there must be limitations on the right to search incident to a traffic arrest. Dickerson v. United States, D.C.App., 296 A.2d 708 (decided November 10, 1972).

In the case at bar, the Government contends that the officer's action was necessary to protect his companion who was talking to the driver and presumably giving him a citation for speeding. The driver had already stopped voluntarily at a stop sign and was not trying to elude the police. Except for the movement of the passenger's arm and shoulder, there was no reason for the police to feel any more apprehension than that which would normally arise from a routine traffic stop at rush hour. There was no indication of criminal activity and the facts do not prompt the sort of fear and apprehension on the part of the officers as they did in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), where the officers had reasonable grounds to believe that the suspects were about to initiate an armed robbery. Since the stop here is only a stop for speeding, it does not fall into the category of a *Terry* stop and we fail to find other factors present to warrant a frisk of the passenger.

The sole cause for suspicion and concern was the testimony that:

I was right up on the right rear of the vehicle and could see right into the rear window and my partner was on the left hand side. At this time Mr. Page looked around at us. He was making a motion in the rear seat as if to hide something or give something out. It was obvious he was trying to hide something to my knowledge at this time. [Tr. at 5.]

. . . . . .

THE WITNESS: I could see his— from his shoulders I could see his head and I could see when he was moving up his shoulder and part of his arm.

THE COURT: In other words, you saw a movement of his right shoulder? Is that what you are saying?

THE WITNESS: That's affirmative sir. Yes sir.

THE COURT: Describe the motion you saw.

THE WITNESS: Mr. Page was sitting, he turned around he looked at me, then he made a motion about the same time, as to put something away, get something, I don't know exactly what he was doing but he was making a motion.

---

1. *See* cases cited n. 39, United States v. Robinson, D.C.Cir., 471 F.2d 1082 (decided October 31, 1972).

2. *Id.* n. 38.

THE COURT: Is that the type motion he was making?

THE WITNESS: Yes sir.

THE COURT: He could have—well, he could have been reaching for a handkerchief.

THE WITNESS: There is a possibility he could have been reaching for a handkerchief, yes sir.

THE COURT: He could have been putting a pack of matches away in his pocket. There is this possibility.

THE WITNESS: Yes sir.

THE COURT: All right.

Q What if anything did you do at that time?

A When I walked up on the vehicle Mr. Page still had his arm towards the back of his body. At this time I looked in the vehicle. My partner walked to the other side and I walked up to see what Mr. Page was actually doing due to the fact my partner was going up to talk to the driver of the vehicle. I then asked, for my own safety and my partner's safety, I asked Mr. Page what he was doing and I then asked Mr. Page to step out of the vehicle. [Tr. at 5–7.]

. . . . . .

THE COURT: Well, Officer, did you ever ask him to bring his hand up before you asked him to get out of the car?

THE WITNESS: He did bring his hand up and it was on his lap.

THE COURT: So his hands were on his lap?

THE WITNESS: At that time.

THE COURT: Exposed to you at the time you asked him to get out of the car?

THE WITNESS: The way the incident occurred, that is correct sir. [Tr. at 10.]

Certainly when police are investigating criminal activity they are entitled to take every reasonable precaution that the law can allow them. Speeding by the driver, however, is not to be put on the same plane as criminal conduct. The record reflects that when the officers saw the car proceeding "at a high rate of speed" one officer suggested: "Let's check the vehicle out." The reason for this statement is not explained in the record, but it seems to suggest something more than merely the apprehending of a speeder.

The ever present risk to the police that is involved even in making a traffic stop is well-known and a matter of concern to all of us. However, if a search of the car, or of the driver or passengers is to ensue, constitutional standards must be applied. United States v. Humphrey, *supra*; People v. Superior Court of Yolo County, 3 Cal.3d 807, 91 Cal.Rptr. 729, 478 P.2d 449 (1970); People v. Pitts, 40 Mich.App. 567, 199 N.W. 2d 271 (1972); Brown v. State, 481 S.W.2d 106 (Tex.Cr.App.1972).[3]

The Government relies on McGee v. United States, D.C.App., 270 A.2d 348 (1970) and United States v. Green, D.C. Cir., 465 F.2d 620 (1972), as well as Terry v. Ohio, *supra*. But as we said in Watts v. United States, D.C.App., 297 A.2d 790 (decided December 7, 1972), "those cases arose out of fact situations much more likely to cause the police reasonable apprehension for their safety" than do the facts in the case at bar.

In *McGee* the defendant, who was seen speeding, refused to heed the officer's siren and bull horn. In order to stop the defendant, the police had to race past him and then cut in front of his car to force him to stop. As the police car passed McGee, he was seen to reach down below the front seat and apparently place something under the seat. The accused was ordered out of the car and asked to produce his permit and registration, which he did. The court upheld a search of the front area of the car

---

3. *See also* note 1, *supra*.

incident to the arrest. The police clearly had a right to arrest the defendant, but of equal importance they had cause to be concerned about the reason for his attempted flight.

In *Green,* likewise relied on by the Government, the accused was driving his car at an excessive rate of speed. When the police followed him he ran a stop sign and was seen to lean over with his arm in front of his body. After he was stopped he was ordered out of the car and an officer leaned inside through the open car door and pulled a fully loaded pistol from under the driver's seat, which the court upheld as a protective search.

Unlike *McGee* and *Green,* the appellee was a passenger and not the driver or the owner of the car. Only the so-called furtive movements of the accused are common to the three cases. As we said in Watts v. United States, *supra,* although such movements by a suspect, who has cause to believe he is about to be arrested, can be of considerable significance in light of other factors, there are few, if any, specific and articulable facts here. The fact that the furtive movements were not made by a suspect but by a passenger in the rear seat of a car stopped for speeding is of considerable significance in examining the reasonableness of the officer's actions, for furtive movements standing alone would hardly warrant a search of the individual concerned. United States v. Humphrey, *supra;* People v. Superior Court of Yolo County, *supra;* People v. Pitts, *supra.*

If the touchstone of warrantless searches is to be "reasonableness" then the search must be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, *supra.*

A vague suspicion based largely on the ambiguous conduct of an occupant of the car does not provide the officer with probable cause to search. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Brown v. State, *supra.* This is necessarily true where the only reason for the stop and investigation is a simple traffic offense without any indication of criminal activity either on the part of the driver or passengers. In our view the facts here do not establish a reasonable basis for a frisk of the appellee.

Holding as we must that the motion to suppress the gun was properly sustained since it was the product of an unreasonable search, albeit a frisk, it necessarily follows that there were insufficient grounds thereafter to conduct a more thorough search of appellee.

Affirmed.