**IN RE D.E.W., Appellant.**

**No. 91–FS–691.**

District of Columbia Court of Appeals.

Argued May 18, 1992.

Decided July 2, 1992.

Christopher A. Swaby, Public Defender Service, with whom James Klein and Jo-Ann Wallace, Public Defender Service, were on the brief, for appellant.

Sidney R. Bixler, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and KING, Associate Judges.

KING, Associate Judge:

Appellant D.E.W., a passenger seated in a car which had been stopped by police after its driver committed a traffic violation, asserts that a police officer unlawfully seized him by ordering him from the car and frisking him for a weapon. He contends the trial court erred in failing to

suppress the pistol as evidence and seeks reversal of the judgment against him for carrying a pistol without a license, D.C.Code § 22–3204(a) (1991 Supp.), possession of an unregistered firearm, D.C.Code § 6–2311(a) (1989), and possession of unregistered ammunition, D.C.Code § 6–2361 (1989). We affirm.

## I.

Officer Vernon Dallas was patrolling in a marked cruiser when he observed two juveniles riding past him in a car. D.E.W. was the passenger; another juvenile was driving. Officer Dallas testified that as he passed the juveniles' car they looked at each other as if they were nervous about being seen by Dallas. Officer Dallas made a U-turn and followed the car. After the juveniles' car illegally passed through several stop signs, the officer radioed his dispatcher and requested assistance. When Officer Cullen arrived in a second patrol car, Officer Dallas activated his emergency equipment. In response, the driver of the car immediately pulled over.

Officers Dallas and Cullen exited their vehicles and approached the juveniles' car with Dallas on the driver's side and Cullen on the passenger's side. As Cullen approached, he observed D.E.W. trying to "shov[e] something down the front part of his pants" under his coat. When Officer Cullen stepped up to the car, D.E.W. stopped moving and "held his hands over the area where he was pushing." Because of D.E.W.'s actions, Officer Cullen believed that D.E.W. was concealing a weapon. Consequently, he drew his gun and ordered D.E.W. out of the car. After D.E.W. complied, Officer Cullen patted D.E.W.'s waist, felt a hard object, and removed a pistol from D.E.W.'s pants. D.E.W. was then placed under arrest.

The trial court ruled that the traffic violations gave the police officers probable cause to stop the car in which D.E.W. was a passenger. The court also found that D.E.W.'s unusual movement in the car—trying to shove something into his pants—gave Cullen articulable suspicion that D.E.W. was concealing a weapon. There-

fore, the trial court ruled, Cullen acted reasonably in ordering D.E.W. from the car to frisk him for a weapon.

## II.

D.E.W. contends the trial court erred in refusing to suppress as evidence the pistol recovered from him. Specifically, he contends Officer Cullen illegally seized him by ordering him out of the car because Officer Cullen "had no 'specific and articulable facts' that D.E.W. was either armed and dangerous or engaged in criminal activity."

We begin with the well settled principle that "in the course of a lawful stop, a police officer may conduct a reasonable search for weapons for his own protection 'where he has reason to believe that he is dealing with an armed and dangerous individual....'" *United States v. Mitchell*, 293 U.S.App.D.C. 24, 28, 951 F.2d 1291, 1295 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In reviewing the validity of such a *Terry* seizure, we apply an objective test of reasonableness: "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). We must consider the totality of the circumstances and not view each specific act or circumstance in isolation. *Peay v. United States*, 597 A.2d 1318, 1320 (D.C.1991) (en banc). Moreover, "the evidence of suspicion 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" *Id.* at 1322 n. 9 (quoting *United States v. Cortez*, 449 U.S. 411, 413, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). " '[I]n judging the reasonableness of the actions of the arresting officer,' the circumstances 'are to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *Id.* at 1322 (citation omitted).

"In reviewing a trial court order denying a motion to suppress, the facts and all reasonable inferences therefrom must

be viewed in favor of sustaining the trial court ruling." *Id.* at 1320 (citation omitted). In this case, Officer Cullen encountered D.E.W. as he sat in a car that had been lawfully stopped by another police officer. Contrary to D.E.W.'s characterization of the facts, the trial court found that his " 'energetic' moving of [his] hand" in the car was not simply a "gesture." Rather, Officer Cullen observed D.E.W. shoving something into the front of his pants while seated in a car as police officers were about to conduct an investigation. Based upon his experience, Officer Cullen believed that D.E.W. was moving his hands under his coat in a manner suggesting that he was concealing a weapon. Viewed under the applicable standards, we find nothing unreasonable about Officer Cullen's actions. Rather, his actions constituted reasonable and prudent "steps to assure himself that the person with whom he [was] dealing [was] not armed with a weapon that could unexpectedly and fatally be used against him." *Terry, supra,* 392 U.S. at 23, 88 S.Ct. at 1881.

D.E.W. asserts that a routine traffic violation does not provide a police officer with sufficient justification for seizing a passenger riding in a car stopped for such a violation. A police officer, D.E.W. contends, may seize a passenger only if that officer has particularized suspicion that the passenger was involved in some criminal activity. We need not decide whether during a "routine" traffic stop a police officer may order a passenger out of a car in which he is riding, and thus effect a "seizure" beyond that which necessarily occurs when the car is stopped, because this case involves more than a "routine" traffic stop. Here, the police officer had reasonable articulable suspicion that D.E.W. was engaged in criminal activity—the concealment of an illegal weapon.[1] Thus, the action taken by the police officer, ordering D.E.W. out of the car and frisking him for a weapon, was lawful.

In *Mitchell, supra,* the United States Court of Appeals for the District of Columbia Circuit affirmed the denial of a motion to suppress as evidence a gun recovered from a passenger under circumstances remarkably similar to those presented in this case. There a police officer stopped a car for speeding and for failing to signal before turning. A second officer, who had responded to the first officer's call for assistance, approached the passenger side of the car. He observed a passenger "moving both his hands inside his coat as he leaned forward." Because the passenger's action made the officer believe that the passenger had a weapon, the officer opened the door and ordered the passenger out. The officer, observing perspiration on the passenger, inquired why he was perspiring. When the passenger responded that it was hot, the officer said "if you're so hot why don't you take your coat off?" When the passenger complied, the officer observed a large bulge under the passenger's sweater above his waist. At that point, the officer frisked the passenger and discovered a pistol in his pants. The court concluded that the officer's actions were reasonable:

> In this uncertain and potentially dangerous situation, [the officer] walked to the car and observed [the passenger] moving both his hands under his coat in a manner suggesting that he was hiding a gun. Based upon his experience, these facts led him to believe that [the passenger] was armed. We do not consider this judgment unreasonable.

*Id.* at 29, 951 F.2d at 1296.

In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), a police officer, who had made a "routine" traffic stop, ordered the driver, Mimms, out of the car. As Mimms exited the car, the officer observed "a large bulge under [Mimms's] sports jacket." *Id.* at 107, 98 S.Ct. at 331. Fearing that Mimms was concealing a weapon, the officer frisked him and discovered a revolver. The Court held that "[t]he bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and

---

1. In the *District* of Columbia, it is illegal to carry "either openly or concealed on or about [one's] person ... a[n] [unlicensed] pistol ... or any deadly or dangerous weapon capable of being so concealed." D.C.Code § 22–3204(a) (1991 Supp.).

present danger to the safety of the officer. In these circumstances, any man of 'reasonable caution' would likely have conducted a 'pat-down.'" *Id.* at 112, 98 S.Ct. at 334.

Once Officer Cullen observed D.E.W.'s movement, what appeared to him to be an unambiguous effort to conceal a weapon, he acted reasonably in ordering D.E.W. out of the car to conduct a pat-down. Officer Cullen was not required "to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Nor was he required to ignore the potential danger. *See United States v. Mason,* 450 A.2d 464, 466 (D.C. 1982) ("protection of the officer making the stop and of innocent bystanders[ ] is of paramount importance" and "has been called the rationale of *Terry*").

D.E.W. contends that his movements were susceptible to a variety of wholly innocent explanations, and therefore the officer's actions were unwarranted. We disagree. The issue is whether the officer had articulable suspicion, not whether D.E.W.'s actions could be construed as innocent behavior. *United States v. Rickus,* 737 F.2d 360, 365–366 (3d Cir.1984). Officer Cullen observed D.E.W. moving his hands in such a way as to lead the officer to believe that D.E.W. was hiding a gun. In *Peay,* we observed that the police officer's legitimate concern for his safety cannot be discounted and that it plays a crucial role in determining the reasonableness of the officer's conduct. The court stated:

> We do not say that a concern based on personal safety, standing alone, will necessary suffice to warrant a *Terry* stop. However, it is a factor that need not be ignored when considering whether the "totality of the circumstances" permits an officer to "detain that person briefly in order to 'investigate the circumstances that provoke suspicion.'" *Berkemer v. McCarty, supra,* 468 U.S. [420] at 439,

104 S.Ct. [3138] at 3150 [82 L.Ed.2d 317] (citation omitted).

*Peay, supra,* 597 A.2d at 1322–1323. The trial court concluded that under the circumstances Cullen's concern was warranted and reasonable; we agree. *See id.* at 1321–22.

D.E.W. relies on *Cousart v. United States,* No. 88–1120, 1991 WL 188785 (D.C. September 20, 1991), *opinion vacated and petition for reh'g en banc granted,* (February 5, 1992) and *United States v. Page,* 298 A.2d 233 (D.C.1972). Because the division opinion in *Cousart* has been vacated by our grant of the government's petition for rehearing en banc, we need not address further D.E.W.'s reliance upon it.[2] As for *Page,* the circumstances in that case are distinguishable from those presented here, and we therefore conclude that the outcome in *Page* is not controlling upon the facts presented in this case.

In *Page,* two police officers riding on scooters stopped an auto that had been speeding. Page was seated in the right rear seat of the auto. As the officers approached, one of them observed Page move his right arm and shoulder. The officer testified that it appeared as though Page was trying to hide something. When the officer asked Page what he was doing, Page responded that he was hiding a can of beer. The police officer, concerned about the safety of himself and his partner, ordered Page out of the auto, frisked him, and recovered a small pistol. The trial court suppressed the pistol recovered from Page after finding insufficient grounds for the search. *Page, supra,* 298 A.2d at 234–235.

On appeal by the government, the court affirmed the trial judge's suppression of the pistol. The court held that the facts presented failed to provide sufficient suspicion and concern to justify the frisk. *Id.* at 237. Specifically, the court concluded that:

**2.** We note, however, that D.E.W. filed his brief in this court prior to our grant of the petition for rehearing en banc in *Cousart.*

In any event, the vacated opinion in *Cousart* would not change the outcome in this case. The

facts in *Cousart* are readily distinguishable from those presented here, and the majority's holding in the vacated *Cousart* opinion is not at odds with our holding.

[e]xcept for the movement of the passenger's arm and shoulder, there was no reason for the police to feel any more apprehension than that which would normally arise from a routine traffic stop at rush hour. There was no indication of criminal activity and the facts do not prompt the sort of fear and apprehension on the part of the officers as they did in *Terry v. Ohio....*

*Id.* at 235.

With respect to the furtive movement in *Page*, the court made two points. First, the court concluded that the record supported the trial judge's finding that Page's movement provided insufficient cause to believe that he was armed and therefore dangerous. *Id.* at 235. Second, the court reiterated that "furtive movements standing alone would hardly warrant a search of the individual concerned." *Id.* at 237 (citation omitted). Neither of those points warrants a reversal in this case.

The movement by D.E.W. was not the ambiguous furtive movement found by the trial court in *Page* to be of little consequence. In this case, the trial judge expressly distinguished *Page* and found that:

> this was not simply "I saw a movement of the shoulder" as the other cases seem to indicate, but the officer made a very strong motion of somebody pushing something down the front of his pants.... It's very unusual for somebody to have anything in there and it gives the police officer an articulable suspicion that there may be a weapon in there.

While a furtive gesture alone may not necessarily provide reasonable suspicion that a person has a weapon, the determination of whether such a gesture would " 'warrant a man of reasonable caution in the belief' that the action taken was appropriate"[3] is case specific, and "the evidence of suspicion [i.e., the significance of the gesture] 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " *Peay, supra,* 597 A.2d at 1322 n. 9 (citation omitted) (quoting *United*

States v. Cortez, 449 U.S. 411, 413, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Thus, Officer Cullen observed movement that was more than a furtive gesture; he observed what appeared to him to be an unambiguous effort to conceal a weapon.

In short, the circumstances in this case are essentially indistinguishable from those in *Mitchell*. The fact that the actions of the police officer in *Mitchell* differ somewhat from the actions of Officer Cullen does not affect our conclusion that Officer Cullen acted reasonably. "Courts do not ... scrutinize the tactical wisdom of a given course of police action and condemn one in favor of another so long as the course of action taken was reasonable." *United States v. Ordway*, 329 A.2d 776, 778 (D.C. 1974). Therefore, we hold that Officer Cullen had articulable suspicion that D.E.W. was concealing a weapon, and that, consistent with *Terry*, he acted reasonably by ordering D.E.W. out of the car and frisking him for a weapon. Accordingly, the judgment of the trial court is

*Affirmed.*

---

3. *Terry, supra,* 392 U.S. at 21–22, 88 S.Ct. at 1880

(citation omitted).