**Antonio S. GREEN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 94–CM–823.

District of Columbia Court of Appeals.

Argued April 20, 1995.

Decided Aug. 10, 1995.

Alice O'Brien, Student Atty., with whom Steven H. Goldblatt and Ellen R. Finn, Supervising Attys., Washington, DC, were on the brief, for appellant.

Matthew G. Olsen, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Thomas C. Black, and Odessa P. Jackson, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before STEADMAN and RUIZ, Associate Judges, and PRYOR, Senior Judge.

RUIZ, Associate Judge:

Appellant Antonio Green was arrested and charged with carrying a pistol without a license and possession of an unregistered firearm and ammunition after he was stopped and frisked by a police officer. Green moved to suppress the pistol and ammunition as the product of an unconstitutional search. After the trial court denied the motion, Green pled guilty to the charges, reserving his right to appeal the denial of the suppression motion. Because the trial court erred in denying the suppression motion, we reverse.

## I.

The government defended the stop and search as lawful pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, which require a reasonable, articulable suspicion that criminal activity is afoot and the person stopped is armed and dangerous. The parties agree that on appeal from the trial court's decision in such a case, although the "facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court's ruling," *Peay v. United States*, 597 A.2d 1318, 1320 (D.C.1991) (en banc), the ultimate conclusion as to the existence of reasonable suspicion is a matter of law for this court to decide. *Lewis v. United States*, 632 A.2d 383, 385 (D.C.1993).

At the suppression hearing, the government presented as its only witness Officer Edward Torrence, who made the stop and conducted the search. Green presented no evidence. The trial court made the following findings, which we find are supported by the record: Torrence and three other officers were parked in a car in the 3200 block of Wheeler Road, Southeast, for the purpose of investigating reports of gunfire. After observing the activities in the area, the officers alighted from their vehicle and stopped several individuals in front of an apartment building.

While they had those persons detained on the ground, Torrence looked up and saw that Green was about to come out of the building. When Green saw the activity outside, however, he backed into the building. Green also placed something into his pocket, but Torrence could not tell what it was. Torrence told Green to stop and identified himself as a police officer. Green did not stop, however, and continued his retreat into the building.

Another person in the building let Torrence inside. Torrence followed Green as he retreated and ultimately stopped Green when Torrence found him in the basement, "peeping around the corner." At that point, Torrence brought Green out of the building and frisked him, finding the pistol giving rise to the charges and the suppression motion.

## II.

At the outset, we must ascertain when the *Terry* stop occurred. *Smith v. United States*, 558 A.2d 312, 314 (D.C.1989) (en banc). For a long time in this jurisdiction, as in others, the rule had been that the stop occurred upon the police officer's display of authority. *See, e.g., id.; In re D.J.*, 532 A.2d 138, 140 (D.C.1987) (holding that start of police pursuit is sufficient display of authority to constitute seizure). Under that test, Torrence's direction while he was still outside the building that Green stop would arguably have been the moment of seizure. The law changed when the Supreme Court held, in *California v. Hodari D.*, 499 U.S. 621, 624–26, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991), that a seizure does not occur in the absence of an application of physical force unless the subject actually yields. Hence, no seizure in the constitutional sense occurred in this case until Torrence actually stopped Green in the basement of the apartment building.

The question becomes whether Torrence had a reasonable, articulable suspicion that Green was engaged in criminal activity and was armed and dangerous, justifying both the stop and the search. *Terry, supra*, 392 U.S. at 30, 88 S.Ct. at 1884–85. The government in its brief points to the following factors to support such suspicion: (1) "reports of an ongoing dispute involving guns and of gunshots in the vicinity of the 3200 block of Wheeler Road"; (2) Torrence observed Green "placing a small, dark object in his coat pocket immediately after being spotted by the police"; (3) Green attempted to "evade the police."

In evaluating whether these facts establish grounds for reasonable suspicion, we "examine all these factors both individually and collectively, for to adequately evaluate the whole, it is helpful to evaluate the constituent parts." *Smith, supra*, 558 A.2d at 314. We bear in mind, however, that "[e]ven if each specific act by a suspect could be perceived in isolation as an innocent act, 'the observing police officer may see a combination of facts that make out an articulable suspicion.'" *Peay*, 597 A.2d at 1320 (quoting *United States v. Bennett*, 514 A.2d 414, 416 (D.C.

1986)). "[T]he circumstances 'are to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *Id.* at 1322 (quoting *United States v. Young*, 194 U.S.App.D.C. 377, 379, 598 F.2d 296, 298 (1979)).

The government's reliance on the fact that the officers had been assigned to the scene based on a report of a dispute involving guns and gunshots is misplaced. It is true that we have had occasion in finding articulable suspicion to rely in part upon testimony that a particular area has a high incidence of crime. *See, e.g., Cousart v. United States*, 618 A.2d 96, 100 (D.C.1992) (en banc) ("high drug area"). In the present case, however, the court made no finding and the government presented no evidence that the neighborhood in which Green was seized was such a place. Instead, there was merely a report of gun activity in the general area at some unspecified time. Torrence had learned of that report during roll call earlier that day. There was no evidence regarding the lapse of time between the report and Torrence's seizure of Green, nor about the specific location of the previous gun dispute. There was not even any evidence regarding what, if anything, was found on those persons Torrence and his colleagues had already detained.

In *Cauthen v. United States*, 592 A.2d 1021, 1023–24 (D.C.1991), we rejected the government's reliance on evidence of a citizen tip concerning illegal activity at a certain street intersection to justify a *Terry* stop that occurred a mere fifteen minutes later at the same intersection. We said "the lack of specificity in the tip leaves too much uncertainty whether the persons the police saw at the corner were the same ones the caller had identified." *Id.* at 1024. The circumstance of the tip was insufficient despite evidence that the defendant had been part of a group that dispersed as soon as the police arrived on the scene. *Id.* at 1022. Therefore, the fact that here there had been reports of gunfire at an unspecified time in a vaguely defined area is of little or no weight.

In addition to the reports of gunfire, the government relied on Green's pocketing of "a small, dark object" and his actions to distance himself from the police activity. We view these actions first individually and more importantly, as contributing to the totality of the circumstances confronting Torrence. Either action, taken individually, would be insufficient. *See, e.g., Duhart v. United States,* 589 A.2d 895, 899 (D.C.1991) (holding that defendant's displaying of unidentified object to another and then placing it in pocket when approached by police insufficient to justify *Terry* stop); *Smith, supra,* 558 A.2d at 316–17 (noting that in those cases in which flight has been held to indicate consciousness of guilt, the accused reacted to a known police presence by running, rather than walking, away); *In re D.J., supra,* 532 A.2d at 141 (holding that defendant's repeated efforts to walk away from police insufficient to establish reasonable suspicion).

Even taken together, however, the two facts are insufficient to establish grounds for a *Terry* stop. Our recent decision in *Anderson v. United States,* 658 A.2d 1036 (D.C.1995), is controlling in this regard. In *Anderson,* the government pointed to seven facts to establish articulable suspicion:

> (1) the area was a high crime area where drug transactions take place; (2) appellant was standing with another man in the backyard of a house on a[n] alley during a cold winter night around midnight; (3) appellant quickly walked away from the police; (4) neither appellant nor the other man resided in the house; (5) appellant denied that he had been in the backyard despite being seen by the officers; (6) appellant placed his hands back in his pocket after being asked to remove them; and (7) appellant became nervous, rocked back and forth, and got wide-eyed upon questioning.

*Id.* at 1038.

We noted in *Anderson* that, as in *Duhart,* the officer had not seen anything that he identified as a potential weapon, nor had the officer observed any criminal activity. Moreover, we noted that in *Duhart* we had relied in part on the rule that " 'citizens have no legal duty to speak to police.' " *Anderson,*

658 A.2d at 1040. Although we did not say the officer should not have investigated the defendant's conduct, the facts did not support the seizure and search. *Id.*

Likewise, in the present case, Torrence did not identify the object Green placed in his pocket as appearing to be a weapon. This case is distinguishable from cases such as *In re D.E.W.,* 612 A.2d 194 (D.C.1992). In that case, a police officer observed two juveniles in a car look at each other when they saw the officer drive by. The officer turned his car around and followed the juveniles' car. After the car went through several stop signs, the officer pulled it over. While approaching the car, the officer observed the defendant attempting to shove something down the front of his pants. *Id.* at 196. In those circumstances, we held that the officer could form a reasonable suspicion that the defendant was concealing a weapon. *Id.* We rejected the defendant's argument that his movements were susceptible of innocent explanation as immaterial. *Id.* at 197. "The question is whether the officer had articulable suspicion, not whether D.E.W.'s actions could be construed as innocent behavior." *Id.* Unlike the defendant in *In re D.E.W.,* Green did not place the item he was carrying in an unusual place, such as down the front of his pants. Instead, he merely put the unidentified object in the pocket of his jacket. The officer did not even testify that the object created a bulge characteristic of a weapon. The pocketing of an object in such an ordinary manner does not create articulable suspicion.

■ As the defendant in *Anderson* did, Green walked away from the police activity. In *Anderson,* that fact was not sufficient to establish articulable suspicion even in conjunction with the several other facts present in that case that are not present in the instant case. The only conceivable distinction is that in the present case, Torrence found Green "peeping." We think, however, that if a person has a right to walk away to avoid contact with the police, he also has a right to attempt to observe an area to learn whether the police have left. The mere fact that a person does so cannot be construed, without more, as evidence of consciousness of guilt sufficient to warrant a *Terry* stop. *Cf.*

*Smith, supra,* 558 A.2d at 319 (observing that flight must be "very clearly in response to a show of authority" and "be carried out at such a rate of speed or in such an erratic and evasive manner that a guilty conscience is the most reasonable explanation").[1]

The government urges that our decision in *Peay, supra,* is controlling. We find *Peay* to be distinguishable. In *Peay,* we held articulable suspicion to be established by the facts that (1) upon the arrival of the police, defendant hurriedly walked *into* a building known to be a place for drug transactions, and (2) the defendant was found standing at the top of the third floor stairs holding something in his hand that appeared to the officer to possibly be a weapon. The court specifically noted that the defendant's actions were not consistent with those of a resident. 597 A.2d at 1321. The present case is different in that there is no evidence that the building Green started to emerge from and then retreated into was known for any kind of illegal activity, nor is there anything suggesting that Green was not a resident of the building.

### III.

The facts in *Anderson, supra,* went further in supporting a finding of articulable suspicion than those established in the present case. Yet we found no articulable suspicion to be established in *Anderson; a fortiori,* sufficient grounds for articulable suspicion were not established in the present case. Green's conviction must be reversed.

*Reversed.*

---

1. Neither party has questioned—and we do not decide—whether the flight analysis we adopted in *Smith* should be modified in light of *Hodari D.*