**Kevin SINGLETON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 08–CF–283.**

District of Columbia Court of Appeals.

Argued April 6, 2010.

Decided June 17, 2010.

Justin P. Lee, Public Defender Service, with whom James Klein and Alice Wang, Public Defender Service, were on the brief for appellant.

Stephanie Brenowitz, Assistant United States Attorney, with whom Channing D. Phillips, acting United States Attorney at the time the brief was filed, and Roy W. McLeese III, Mary B. McCord, Elizabeth Gabriel, and Scott L. Sroka, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ, Associate Judge, and FERREN and SCHWELB, Senior Judges.

RUIZ, Associate Judge:

Appellant, Kevin Singleton, entered a conditional plea of guilty to attempted carrying a pistol without a license ("CPWL"),[1] possession of an unregistered firearm ("UF"),[2] and unlawful possession of ammunition ("UA"),[3] after the trial court denied his Motion to Suppress Tangible Evidence. On appeal, he argues that the trial court erred in denying his motion to suppress the firearm because the officer who stopped and frisked him (and found the firearm on appellant) did not have reasonable articulable suspicion that he was armed. We affirm.

## I. FACTS

1. *The Government's Evidence*

At the suppression hearing, United States Park Police Officer Michael Abate testified that, on the morning of June 5, 2007, he was on routine patrol on a motorcycle in an alley south of the 1300 block of Columbia Road, in N.W., Washington, D.C.

---

1. D.C.Code § 22–4504(a).

2. D.C.Code § 7–2502.01.

3. D.C.Code § 7–2506.01(3).

He saw appellant come out of an apartment building accompanied by an "older woman," appellant's grandmother. According to Officer Abate, appellant "appear[ed] to have a bulge consistent with a firearm" in the right front pocket of his jeans. Officer Abate observed that appellant was walking "in a rigid manner and appeared to be very nervous," looking in Officer Abate's direction "approximately five times ... to see what [the officer] was doing." Officer Abate testified that appellant began "quickly walking away," although his pace "couldn't really be that fast because he was with an older woman." The officer described appellant as having a "stiff posture, possibly to try and minimize the effects of the bulge coming out of the pants." Officer Abate also saw appellant "making motions with his hand towards his right front pocket." Appellant continued to look back at Officer Abate as if "to see what [the officer's] actions were."

Based on his observations, Officer Abate believed that appellant had a firearm in his pocket. Acting on that belief, Officer Abate drove his motorcycle over to appellant in a "bee line," and, without any preliminary questioning, "stopped and contacted and performed a frisk." The officer "immediately" felt the outline of a pistol in appellant's right front pant pocket. After handcuffing appellant, the officer searched inside the pocket, where he found a .32–caliber revolver loaded with five rounds of ammunition. When asked why he believed the bulge in the pocket was caused by a firearm, Officer Abate testified that, based on his training and experience, he was "quite familiar with the sizes and shapes [of firearms] and ... what one would look like underneath clothing." Officer Abate explained that he had been a military police officer "master at arms" with the United States Navy for five years and a civilian police officer for eight years before this encounter, and that during the course of

his career as a police officer, he had participated in "several dozen" arrests during which firearms were recovered.

On cross-examination, Officer Abate was questioned about the fact that he had not described the bulge he saw in appellant's pocket as having the appearance of a firearm or appellant's "awkward" way of walking in either of his two police reports or in his grand jury testimony. Officer Abate responded indirectly:

> Well, if I knew what ... it was, it wouldn't have been a stop and frisk. It would've been he's under arrest if I knew there was a firearm in there. But I could tell you, from being around firearms, I know exactly what and how a person walks when you have a firearm in your pocket, because I've had one in mine for years ... [I]t's an awkward movement when you're carrying a firearm because, obviously, you have a loaded weapon that is lethal, and if it goes off, it's going to potentially strike you. So I'm very familiar with how someone walks, especially when you have a firearm in your pocket that does not have a holster with it.

The court followed up and asked Officer Abate "what made [him] think the bulge was a firearm, and not an apple or some other large object." Officer Abate explained:

> [B]eing around firearms, I know how you consciously put ... your hand, when you have a firearm[ ] in your pocket [when] you're walking away. I mean it's just something that you do, especially with a firearm that's not in a holster, to potentially maybe brace it so something does not get in the trigger guard ... [I]t just seemed ... unreasonable ... to have anything else but a firearm. So that's why I did the frisk. With the entire action of [appellant] coming out of

the house and seeing the police, having an object that[ ] was consistent ... [with] a firearm, and ... the awkward movement of continuing to look back over the shoulder to see what I was doing I thought warranted enough to at least do further investigation into a frisk.

### 2. The Defense Evidence

Appellant's grandmother, Cynthia Singleton, testified on appellant's behalf. She recounted that, on the day appellant was arrested, they had left their apartment at 1302 Columbia Road, N.W., to go to the grocery store. As they were walking, she noticed two police officers, one on a motorcycle and the other one in a car. Ms. Singleton said that appellant did not hold his pocket while they were walking or look back at the police officers; instead, appellant asked her "why [is the police officer] looking at me[?]"

### 3. The Trial Court's Ruling

The trial court "fully credit[ed]" Officer Abate's testimony, and found him to be "entirely candid, not evasive ... in any way, and not ... embellishing or adding the facts that could have enhanced his testimony."[4] The court found that the officer's attention was initially drawn to appellant because of the bulge in appellant's pocket, which appeared to be a firearm, and that he then observed appellant's "rigid manner" of walking, which was "consistent with how one walks when there's a handgun in his pocket," and that appellant was "very nervous, kept looking over his shoulder." The court concluded that viewed together, those factors "gave the

officer reasonable articulable suspicion to briefly stop [appellant] and to do a quick pat down search for his own safety because ... as soon as he saw the bulge he believed it to be a gun."

Appellant entered a conditional plea and filed this appeal.

### II. ANALYSIS

■■■ When reviewing a trial court's ruling on a motion to suppress, "the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court's ruling." *Howard v. United States*, 929 A.2d 839, 844 (D.C.2007) (quoting *In re T.H.*, 898 A.2d 908, 912 (D.C. 2006)). "While factual findings will not be disturbed if supported by substantial evidence, conclusions of law are reviewed *de novo*." *Id.* Whether the police officer had a sufficient basis to seize a suspect is a conclusion of law. *See (Thomas) Green v. United States*, 974 A.2d 248, 255 (D.C. 2009) (We "make our own independent determination of whether there was ... reasonable suspicion justifying a *Terry* stop.").

■■■ "To conduct a brief, investigatory stop of a person in keeping with the Fourth Amendment, a police officer must have a reasonable, articulable suspicion that criminal activity may be afoot." *Wilson v. United States*, 802 A.2d 367, 369 (D.C.2002) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "The requirement of 'articulable suspicion' is not an onerous one." *Jackson v. United States*, 805 A.2d 979, 988–89 (D.C.2002) (quoting *Gomez v. United*

---

4. The trial court also considered the defense evidence, noting that Ms. Singleton "confirmed that [appellant] was concerned by the presence of a police officer" and asked why the officer was looking at him. Although Ms. Singleton did not see appellant glancing at Officer Abate or placing his hand on his pocket, the court found that "those are matters that she would not have necessarily observed or recalled clearly." The court found "nothing in her testimony to make [it] discredit the testimony of Officer Abate."

*States,* 597 A.2d 884, 888 (D.C.1991)). "Various factors are considered in determining whether a *Terry* stop is justified, including 'the time of day, flight, the high crime nature of the location, furtive hand movements, an informant's tip, a person's reaction to questioning, a report of criminal activity or gunshots, and viewing of an object or bulge indicating a weapon." *Id.* at 989. (quoting *Anderson v. United States,* 658 A.2d 1036, 1038 (D.C.1995)). "Although each factor is useful in determining whether there were articulable facts justifying the stop, these factors 'are not elements of a conjunctive test,' and no one factor is 'outcome determinative.'" *Umanzor v. United States,* 803 A.2d 983, 993 (D.C.2002) (quoting *In re D.A.D.,* 763 A.2d 1152, 1155 (D.C.2000)). "The totality of the circumstances may establish reasonable suspicion despite the fact that all of the factors are not met, and additional circumstances may also be considered." *Id.* at 993–94.

Appellant claims that Officer Abate lacked the reasonable articulable suspicion necessary to conduct a *Terry* stop and frisk. He argues that the officer's observation of a bulge in appellant's pocket could not form a reasonable and articulable suspicion that he was carrying a firearm because a man's pant pocket is where men carry a host of innocent objects that would create a bulge. As defense counsel argued at the suppression hearing:

> [M]en don't often carry purses. They carry their items in their pockets, so there's a number of things that a man would carry that include keys, cell phones, wallets, cigarettes, [and] anything that could make a bulge in a pocket.

Appellant also contends that Officer Abate's description of appellant's "rigid manner" of walking did not give Officer Abate reasonable and articulable suspicion that appellant was unlawfully carrying a firearm because the officer did not describe with particularity how the manner in which appellant was walking suggested he had a firearm in his pocket and not some other object. Moreover, because Officer Abate had observed no evidence or received a report of criminal activity casting suspicion on appellant, and the officer conducted no preliminary investigation or inquiry before stopping appellant, he had no reason to believe that the object in appellant's pocket was a weapon.

 In considering whether the totality of the circumstances gave rise to reasonable articulable suspicion, we do so "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *(Antonio) Green v. United States,* 662 A.2d 1388, 1390 (D.C.1995) (quoting *Peay v. United States,* 597 A.2d 1318, 1322 (D.C.1991) (en banc)). As appellant correctly argues, however, conclusory statements expressing an officer's belief that a person is involved in criminal activity are insufficient to establish reasonable articulable suspicion. *See Terry,* 392 U.S. at 27, 88 S.Ct. 1868 (rejecting as incompatible with the Fourth Amendment, seizures based on an "inchoate and unparticularized suspicion or hunch"). "Reasonableness"—the touchstone of the Fourth Amendment—in the context of a seizure requires "some minimal level of objective justification...." *INS v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). That level of justification, reasonable articulable suspicion, is "less demanding" than probable cause and "considerably less" than preponderance. *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). But even though not a demanding standard, to be "reasonable" the suspicion must be based on facts that would have led another officer to have a similar suspicion. Moreover, to be "articulable," there must

be specific evidence—not merely conclusions—that led the officer to suspect criminal activity in a particular circumstance. *See United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). These two requirements are not only the minimal safeguard of a person's constitutionally protected freedom to go about without coercion or seizure, but also are necessary for meaningful judicial evaluation of police action. We, therefore, look closely at the evidence presented and the trial court's assessment of that evidence, understanding that each case must be evaluated on its own merits, and that "case matching" is of limited utility under a totality of the circumstances analysis. *Umanzor,* 803 A.2d at 992.

Officer Abate testified that there were several factors that caused him to suspect that appellant was armed and dangerous: the bulge in the appellant's front pant pocket that initially caught the officer's attention, appellant's protective hand gesture over that pocket, his stiff gait, his apparent nervousness, and the fact that he repeatedly looked over his shoulder at the officer. Appellant argues that Officer Abate's testimony was largely conclusory. Specifically, he claims that the officer failed to describe with particularity the size and shape of the bulge that led him to believe it was "consistent" with a firearm. The officer did not give measurements or describe the shape of the bulge; instead, he testified that he was "familiar with the sizes and shapes [of firearms]" and how a firearm "would look underneath clothing." Officer Abate also said that appellant was "walking in a rigid manner" and testified that he knew, based on personal experience with firearms, how someone walking with a firearm in his pocket "consciously" places his hand on the pocket "to potentially maybe brace it so something does not get in the trigger guard," that could cause the weapon to fire, injuring the person.

According to Officer Abate, that is how appellant was walking. Officer Abate also testified that appellant had made motions with his hand toward the pocket with the bulge. Moreover, Officer Abate observed that appellant appeared to be "extremely nervous," looked over his shoulder at the officer approximately five times "within ten paces of exiting the building," attempted to "quickly walk[ ] away," and continued to look back at Officer Abate as if "to see what [his] actions were." Based on his observations and experience, Officer Abate inferred that the bulge in appellant's pocket was a weapon. He stopped and frisked appellant to confirm his suspicion.

As the record reveals, this is not a case where the trial court unquestioningly accepted the officer's conclusion. After hearing the officer testify on direct and on cross-examination, the court asked the officer why he thought that the bulge in appellant's pocket was a firearm and not some innocent object. The trial court believed the officer's explanation, and, because that explanation was reasonable, we are in no position to doubt it.

We approach this conclusion cautiously. Officer Abate did not specifically describe the shape or size of the bulge; rather, he testified that it was "consistent" with a firearm. If that were all the evidence presented at the suppression hearing, we would find it difficult to conclude there was reasonable articulable suspicion to stop appellant. *Compare People v. Montoya,* 828 P.2d 251, 254 (Colo.1992) (en banc) (holding that bulge in pants pocket "that resembled a .25 caliber automatic pistol" was insufficient to justify frisk), and *Ransome v. State,* 373 Md. 99, 816 A.2d 901, 906 (2003) (noticeable bulge in man's pocket—without more—is insufficient to justify reasonable suspicion person is armed), *with United States v. Black,* 525

F.3d 359, 365 (4th Cir.2008) (holding that officer had reasonable articulable suspicion to stop person who was holding on to an object "6 to 8 inches long," "1 to 1 ½ inches high," with a "flat side"). That is because a generic bulge in a pocket can be explained by too many innocent causes to constitute "reasonable" suspicion. Moreover, even though a particular officer might believe a bulge conceals a weapon, a purely subjective impression is not an "objective justification" that can be judicially examined against the requirements of the Fourth Amendment. To accept such a subjective impression without further elaboration would be tantamount to judicial acquiescence in an officer's legal determination that the requirements of the Fourth Amendment have been satisfied.

In this case, however, there is more than a bulge to inform the court's examination: appellant's awkward walk and hand movement that seemed to be protective of a firearm secreted in the pocket and appellant's apparent nervousness as he repeatedly looked over his shoulder at Officer Abate. The officer's personal experience with carrying a loaded pistol in his pocket gave him a reasonable basis for perceiving that appellant, with these actions, was doing the same. Although the objective evidence in this case is close to the minimum required to pass constitutional muster and permit meaningful judicial evaluation, we agree with the trial court's conclusion that Officer Abate had a reasonable articulable suspicion that appellant was carrying a firearm, which permitted the officer to temporarily stop and frisk appellant. We base our conclusion that the stop was justified on the "totality of the circumstances," *Umanzor*, 803 A.2d at 993–94, which in this case included not only a bulge "consistent" with a firearm that initially aroused suspicion, but, importantly, also a number of other factors that corroborated the officer's initial suspicion that the object in appellant's pocket was a firearm.[5] This "combination of facts," *United States v. Bennett*, 514 A.2d 414, 416 (D.C.1986), as articulated by Officer Abate, gave reasonable justification to stop and frisk appellant.[6]

**5.** We note that in coming to this conclusion, we do not rely on cases where the police already had justification to conduct a traffic stop before frisking an occupant of the car after noticing an unusual bulge on the person. *See, e.g., Pennsylvania v. Mimms*, 434 U.S. 106, 111–12, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (after stopping car with expired license plate and asking driver to step out, officer noticed large bulge under driver's sports jacket); *United States v. Baker*, 78 F.3d 135, 137 (4th Cir.1996) ("Based on the inordinate risk of danger to law enforcement officers during traffic stops, observing a bulge that could be made by a weapon in a suspect's clothing reasonably warrants a belief that the suspect is potentially dangerous, even if the suspect was stopped only for a minor violation."). Here, Officer Abate was not faced with a potentially dangerous suspect he had justifiably stopped where the question is whether that justifiable intrusion can reasonably be extended to a frisk based on potential danger to the officer. Rather, the officer confronted appellant and immediately frisked him, and the question is whether a stop was justified in the first instance.

**6.** Notwithstanding our skepticism about the utility of "case matching" under a totality of the circumstances analysis, *Umanzor*, 803 A.2d at 992, we note that here the bulge that the officer observed was not present in the otherwise similar situation in *In re R.M.C.*, 719 A.2d 491, 496 (D.C.1998), where we held that there was no reasonable articulable suspicion where suspect was walking "very close to other people," acted nervously, clutched or protected one of his sides, but officer had not received report of criminal activity and "saw no bulge on the suspect" "indicating the possibility of a weapon." *See (Antonio) Green*, 662 A.2d at 1391 (no reasonable articulable suspicion where suspect placed an unidentified object in his pocket and distanced himself from police officers, but the officer did not observe that "the object created a bulge characteristic of a weapon").

Appellant's convictions are

*Affirmed.*