Dissenting opinion by Associate Judge Easterly at page 78.
Farrell, Senior Judge:
Following a bench trial, appellant was found guilty of attempted voyeurism, in violation of D.C. Code §§ 22-3531(b)(1), -1803 (2013 Repl.). On appeal, he contends that as a matter of law his conduct did not satisfy the requirements of the voyeurism statute because he did not "occupy a hidden observation post." We disagree and affirm.
I.
The Facts
Viewed in the light most favorable to the verdict, the evidence established that shortly after midnight on January 6, 2015, Shirley Cartwright and her niece visited Epicurean and Company, a restaurant on the campus of the Georgetown University Medical Center. The restaurant was not busy; only four employees (two cashiers, *75 appellant, and a supervisor) and about five customers were on the premises, besides Ms. Cartwright and her niece. After paying for her food, Ms. Cartwright asked a cashier for directions to the rest room. The cashier guided her to a hallway and pointed out the ladies' rest room at the end of the hall on the left. As Cartwright passed the door to the men's rest room, appellant was leaving the room with a dustpan and a broom. Cartwright heard appellant speak briefly with the cashier who had given Cartwright directions. A still-image taken from a hallway video surveillance camera showed appellant looking back at Cartwright just before she entered the ladies' rest room.
Cartwright went into the rest room, which was unoccupied, and entered the last stall. The stalls were separated from each other by floor-to-ceiling walls, and the stall doors extended nearly to the floor, leaving a space of 12 to 14 inches at the bottom. Cartwright did not hear anyone knock or make other noises. While sitting on the toilet, she "got this really eerie feeling ... and felt really weird and crazy." She looked down and saw "this man down, way down to the ground looking under my stall." The man's face was sideways, but she could not see the rest of his body; judging from the position of his head, Cartwright believed that his body was "down on the ground." Appellant was looking directly at her. Cartwright screamed and cursed at appellant, telling him to get out. Appellant said nothing, got up, and ran out of the rest room. Cartwright recognized him in the bathroom, and testified accordingly, as the restaurant employee she had seen in the hallway.
Appellant testified that he had entered the ladies' room and remained there only to clean it, thinking it was vacant. Noticing that the door to the third stall was closed, he looked underneath it and was surprised to see Cartwright in the stall. On cross-examination, he was shown surveillance footage from the hallway in which he is seen approaching the door to the ladies' room about thirty seconds after Cartwright entered it. Appellant acknowledged that he turned back before entering, walked to the men's room, looked briefly inside, and then returned to the ladies' room and entered it.
In finding appellant guilty, the trial court credited Cartwright's testimony and found that appellant had entered the ladies' room "quietly and surreptitiously," hid himself as well as he could to observe Cartwright, and left only when he was discovered.
II.
Discussion
Whether appellant's charged conduct met the statutory requirements for voyeurism is a question of law this court decides de novo . See Brown v. United States , 97 A.3d 92, 95 (D.C. 2014).
Introduced as the "Privacy Protection Act of 2005" and enacted in 2007 as part of the "Omnibus Public Safety Amendment Act," the voyeurism statute prohibits acts of voyeurism accompanied by surreptitious filming or recording, and also, in part, makes it unlawful for a person "to occupy a hidden observation post ... for the purpose of secretly or surreptitiously observing an individual who is ... [u]sing a bathroom or rest room ...." § 22-3531(b)(1). The statute does not define the term "hidden observation post," which was added to the legislation during the markup process.
Appellant argues that, however the term is defined, he could not as a matter of law "occupy a hidden observation post when at the time [alleged he was] not in hiding, but in plain view of the alleged victim." The *76 argument appears to be that without proof that his presence was unknown to the victim for some discernible time before she saw him and screamed, he could not have been "hidden" while observing her. Appellant's broader argument is that "a public rest room is," by definition, "not a hidden observation post," at least without the use of a "peephole, mirror or electronic device for the purpose of observing someone,"[1] because anyone "st[anding] in the middle of a public rest room" is "in plain and clear view of anyone else in [the] rest room's common area."
Neither of these arguments is persuasive. Appellant did not merely "st[and] in the middle of a public rest room," and the judge, as trier of fact, could fairly conclude that appellant staged his behavior so as to maximize the likelihood that he would be able to observe Cartwright in the stall while unseen. Specifically, according to evidence the judge credited, appellant first checked to see that no one was near the rest room, then silently entered it, dropped to the ground, and positioned his head sideways near the floor to look under the door in a way calculated to not draw attention. He thus occupied a "hidden observation post" by any common-sense understanding of the phrase.
Black's Law Dictionary, although with military usage predominantly in mind, defines an "observation post" as "a position from which an enemy or potential enemy can be watched." Observation Post , BLACK'S LAW DICTIONARY (10th ed. 2014); see Hood v. United States , 28 A.3d 553, 559-60 (D.C. 2011) (where a statute does not define a term at issue, courts look to the "ordinary or common" meaning, for which "we may look to the dictionary."[2] Thus, an "observation post" need only be a "position," rather than a fixed or enclosed structure or site, from which an observer can watch the activity of others. Appellant's position on the floor qualified as one because, as the trial judge fairly concluded, he occupied it for the purpose of observing Cartwright.
Appellant's observation post was also "hidden" from Cartwright, if only briefly. The evidence showed that he was and intended himself to be concealed from her and others, because (1), according to the video surveillance from the hallway, he checked his surroundings before entering the rest room, (2) the door to the rest room closed behind him, (3) the rest room was located at the end of a hallway at some distance from the restaurant's food-service area, and (4) the restaurant had few customers after midnight. Further, he entered the rest room quietly without knocking or announcing his entry and remained still as he lowered his body and head far enough to the ground to see Cartwright. The fact that he was hidden from her just momentarily has no bearing, otherwise the statute would excuse clumsy efforts at concealment and punish only more artful ones (such as peering over the top of the dividing panel from an adjoining stall, confident that a seated victim will feel no need to look above her head).
Applying the statute to make appellant's conduct unlawful is consistent with its legislative aim, which is to "prohibit persons from spying on their neighbors, guests, tenants, or others in places and under circumstances where there is an expectation of privacy, that is, in a home, bedroom, *77 bathroom, changing room, and similar locations and under one's clothing." Letter from Anthony A. Williams, Mayor, District of Columbia, to Linda W. Cropp, D.C. Council Chairman, introducing the legislation (Apr. 6, 2005), 8 (http://lims.dccouncil.us/Download/15575/B16-0247-CommitteeReport1.pdf at 36) ). There is no evidence that the D.C. Council, in enacting the "Privacy Protection Act of 2005" and adding the phrase "hidden observation post," intended to outlaw the surreptitious use of, say, bathroom peepholes and mirrors but to permit acts of voyeurism in staged circumstances such as this case presents. The effect on the victim is the same, and the conduct equally offensive.[3]
Appellant further errs in arguing that if the common area of a rest room may serve as a post within the statute's meaning, then "nearly all public areas" would qualify as hidden observation posts. As explained, what made appellant's position a hidden observation post were the circumstances making his vantage point private, not public. After midnight when there were few restaurant patrons, he stealthily entered the ladies' room and closed the door behind him, then, having reason to believe he was hidden from others and Cartwright, positioned himself so as to spy on her while she used the facility. This conduct, designed to enable appellant to observe the victim while himself unseen, met the statutory requirement that he occupy a hidden observation post.
The dissent asserts that appellant engaged in no more than "simple viewing" unreached by the statute, post at 78-79, which it says prohibits only "the use of special techniques and devices for surveillance and recording," id. at ----, those suited to "allow[ing] a user to evade detection and cause greater (and in the case of recording) more lasting harm." Id. Besides thereby slighting (as transitory and not "lasting") the degradation Cartwright felt in being spied on only briefly, the dissent effectively collapses the statutory act of "occupy[ing] a hidden observation post" into its companion forbidden acts of "install[ing] or maintain[ing] a peephole, mirror, or any electronic device" for the same illicit purpose.[4] But the Council did not limit itself to punishing the use of "specialized surveillance devices and techniques" to spy, perhaps because it saw the impossibility, under a law meant to enhance privacy in public bathrooms (among other spaces), to explain to someone in Cartwright's place why the statute would shield them against surveillance by "artful" devices but not against less sophisticated yet equally degrading forms of spying such as appellant carried out. Likewise, if the Council were unconcerned with brief or furtive acts of spying, requiring the voyeur instead to maintain the advantageous post "for more than a transitory period of time," post at 82, one would expect it to have said so, assuming it thought courts could meaningfully tell when transitory becomes nontransitory. (Suppose, for example, *78 a bathroom stall occupant is absorbed in her cellphone contents until suddenly realizing she is being-and has been-peered at from over the top of the stall divider or from under her stall door. Transitory or intransitory?)
The dissent's additional argument that when appellant spied on the victim, however briefly, "he was not hidden from anyone who might enter the rest room," post at 83, ignores the precautions he took to avoid just such discovery. And likewise, the assertion that he "was [not] hidden from Ms. Cartwright[ ] when she looked down in his direction," id. at 83, merely repeats the dissent's view that clumsy acts of spying not likely to buy the voyeur more than short-lived gratification are unreached by the statute.
In short, appellant did not just "engage[ ] in simple viewing," post at 79, as though seated on a park bench viewing passersby, but employed his own artifice and precautions to observe, unseen, a person whose privacy the statute is expressly meant to protect. Moreover, by any reckoning, he attempted to practice such voyeurism, which is what the charging document alleged.
Affirmed.

Section 3531 (b) likewise makes it a crime to "install or maintain a peephole, mirror, or any electronic device" for the purpose of secret observation.

See also West End Tenants Ass'n v. George Washington Univ. , 640 A.2d 718, 726, 727 (D.C. 1994) ("[I]f a word that should be defined in a statute is not, then its commonly accepted meaning is applied.").

There are limits, of course, to the reach of the statute. A person, uncertain whether anyone was occupying a bathroom stall behind its closed door, who looks under the door to eliminate the uncertainty would not have satisfied the "purpose[fulness]" element of the statute. The same would be true if the person opened an (unlocked) door of the stall to check occupancy. For the reasons stated, appellant's defense at trial along these lines was properly rejected by the trial judge.

The dissent gives itself a crutch by including "techniques" (not just "devices") in its description of the forbidden conduct, but does not explain why appellant's stratagem, with its accompanying precautions, was not a "technique"-unless, for the dissent, it must have been designed more "artful[ly]," post at 78-79, 81, so as to produce "greater ... and more lasting harm" to the victim than what Cartwright endured.